IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                    )
DONALD G. JACKMAN, JR.              )
                                    )
              Plaintiff,            )
                                    )
       v.                           )Civil Action No. 05-1889(HHK)
                                    )
DEPARTMENT OF JUSTICE               )
BUREAU OF ALCOHOL, TOBACCO,         )
FIREARMS AND EXPLOSIVES             )
                                    )
              Defendants.           )
                                    )
_____)
```

## MOTION FOR SUMMARY JUDGMENT

The defendants, pursuant to Rule 56 of the Federal Rules of Civil Procedure, move for summary judgment on the grounds that there are no material disputes of fact and the defendants are entitled to judgment as a matter of law.

In support of this motion, the defendants submit a Statement of Facts as to Which There Is No Genuine Issue, the Declaration of Peter J. Chisholm, and a Memorandum of Points and Authorities.

Pro se plaintiff will please take note that the assertions contained in the accompanying declaration and other attachments in support of defendants' motion will be accepted by the Court as true unless plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in defendants' declarations and attachments. Plaintiff is referred to Local Rule 7(h), Local Rule 56.1 and Federal Rule 56(e), which provide as follows:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

See also Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992) (same).

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney


_____
R. CRAIG LAWRENCE, D.C. Bar #171538
Assistant United States Attorney


_____
DIANE M. SULLIVAN, D.C. Bar #12765
Assistant United States Attorney
555 4TH St., N.W.,
Civil Division
Washington, D.C.  20530
(202) 514-7205

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                                    )
DONALD G. JACKMAN, JR.              )
                                    )
               Plaintiff,           )
                                    )
       v.                           )Civil Action No. 05-1889(HHK)
                                    )
DEPARTMENT OF JUSTICE               )
BUREAU OF ALCOHOL, TOBACCO,         )
FIREARMS AND EXPLOSIVES             )
                                    )
               Defendants.          )
                                    )
_____ )
```

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Introduction**

Plaintiff, a prisoner incarcerated at McKean Federal Correctional Institution in Bradford, Pennsylvania, filed suit under the Freedom of Information Act, 5 U.S.C. § 555 (Complaint ¶ 1).

**Background**

On December 14, 2004, the Disclosure Division of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) received a letter dated December 6, 2004 containing plaintiff's request for a legible copy of an "illegible laboratory report" (Chisholm Declaration ¶ 3). Plaintiff claimed this was his fourth request for this particular document (Id., Exhibit A). ATF requested proof of identity or a reference number to plaintiff's previous FOIA requests (Id. ¶ 4, Exhibit B).

On January 5, 2005, ATF Disclosure Division received by mail plaintiff's reply which included a notarized statement validating his identity (<u>Id</u>. ¶ 5, Exhibit C).

A search of ATF's " request recording" databases confirmed that Mr. Jackman's December 6, 2004, FOIA request letter was the first correspondence it had received from Mr. Jackman concerning the document (<u>Id</u>., page 2, footnote 1).

On January 28, 2005, ATF provided Mr. Jackman with the requested document.  ATF withheld names and identifying information of third parties under Exemption (b)(7)(C) (<u>Id</u>., ¶ 6, Exhibit D).  On February 16, 2005, ATF's Disclosure Division received a letter from Mr. Jackman in which he alleged the document had been falsified for use at his criminal trial and requested a factual document (<u>Id</u>. ¶ 7, Exhibit D).

On March 7, 2005, ATF responded by notifying plaintiff that all documents responsive to his December 6, 2004 FOIA request had been released (<u>Id</u>., ¶ 8, Exhibit F).  The office of Information and Privacy (OIP), Department of Justice (DOJ) received plaintiff's appeal and directed its own search for responsive documents (<u>Id</u>., ¶¶ 9-11, Exhibits G-I).  OIP confirmed ATF's decision on April 18, 2005 (<u>Id</u>., Exhibit I).

<u>**Argument**</u>

I.     <u>**Standard of Review**</u>

A.     <u>**Standard for Summary Judgment**</u>

Where no genuine issue of material fact exists, summary judgment is required.  Fed. R. Civ. P. 56(c), <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation.  <u>Id</u>. at 247.  "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the [Court] – that there is an absence of evidence to support the non-moving party's case."  <u>Sweats Fashion, Inc. v. Panel Knitting Co.</u>, 833 F.2d 1560, 1563 (Fed. Cir. 1987) (quoting <u>Chelates Corp. v. Citrate</u>, 477 U.S. 317, 325 (1986)(emphasis in original)).

In <u>Anderson</u>, the Supreme Court adopted a threshold by which to determine whether summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is
> not significantly probative, . . . summary
> judgment may be granted . . . . [T]he mere
> existence of a scintilla of evidence in support of
> the Plaintiff's position will be insufficient;
> there must be evidence on which the jury could
> reasonably find for the Plaintiff.

477 U.S. at 252.  <u>See also</u> <u>Laningham v. U.S. Navy</u>, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor).  In <u>Chelates</u>, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral

3

part of the Federal Rules as a whole, which are designed 'to
secure the just, speedy and inexpensive determination of every
action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The summary judgment standards expounded above also apply to
FAIA cases, which are typically resolved through motions of
summary judgment.[1]  See Cooper Cameron Corp. v. U.S. Dep't of
Labor, 280 F.3d 539, 543 (5th Cir. 2002).  In a FAIA suit,
summary judgment is appropriate when an agency demonstrates that
no material facts are in dispute and that each document requested
either has been produced, not withheld, is unidentifiable, or is
exempt from disclosure.  Students Against Genocide v. Dep't of
State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg. v. U.S.
Dep't of Justice, 627 F.2d 365, 368 (D.C. Cir. 180).

An agency may satisfy the requirements of summary judgment
in a FOIA case by proffering to the Court and Plaintiff
affidavits or declarations and other evidence which show that the
documents are exempt from disclosure.  Hayden, 608 F.2d at 1384-
86; Church of Scientology of California v. U.S. Dep't of Army,
611 F.2d 738, 742 (9th Cir. 1980).  Summary judgment may be
awarded to an agency in a FOIA case solely on the basis of
information provided in affidavits or declarations when the
affidavits or declarations describe "the documents and the

---

[1] For purposes of summary judgment, an agency's decision to
withhold information from a FOIA requester is subject to de novo
review by the courts.  Hayden v. National Sec. Agency Cent. Sec.
Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446
U.S. 937 (1980).

justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." <u>Military Audit Project v. Casey</u>, 656 F.2d 724, 738 (D.C. Cir. 1981).  <u>See</u> <u>also</u> <u>Weisberg</u>, 745 F.2d at 1485; <u>Public Citizen, Inc. v. Dep't of State</u>, 100 F. Supp. 2d 10, 16 (D.D.C. 2000)(quoting <u>McGhee v. CIA</u>, 697 F.2d 1095, 1102 (D.C. Cir. 1983); <u>Bowen v. U.S. FDA</u>, 925 F.2d 1224, 1227 (9th Cir. 1991).

Once the moving party has met its burden that there is an absence of evidence to support the non-moving party's case, the burden shifts and the non-movant may not rest on mere allegations, but must proffer specific facts showing that a genuine issue of material fact exists for trial.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Therefore, to avoid summary judgment, Plaintiff must present some objective evidence that would enable the court to find that he is entitled to relief.  In <u>Chelates</u>, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute of material fact. 477 U.S. at 322-23.

### B.   **ATF Has Submitted Proper "Vaughn" Indices**

The declarations and/or affidavits (singly or collectively) submitted in support of motions for summary judgment are

5

generally referred to as a <u>Vaughn</u> index.[2]  <u>Vaughn v. Rosen</u>, 484
F.2d 820, 827-28 (D.C. Cir 1973), <u>cert</u>. <u>denied</u>, 415 U.S. 977
(1974).  There is no set formula for a <u>Vaughn</u> index.  After all,
"it is well established that the critical elements of the <u>Vaughn</u>
index lie in its function, and not in its form." <u>Kay v. FCC</u>, 976
F. Supp. 23, 35 (D.D.C. 1997).  The only requirement is that the
index gives the reviewing court a "reasonable basis to evaluate
the claim of privilege." <u>Delaney, Midgail & Young, Chartered v.</u>
<u>IRS</u>, 826 F.2d 124, 128 (D.C. Cir. 1987).  <u>See also</u> <u>Keys v. Dep't</u>
<u>of Justice</u>, 830 F.2d. 337, 349 (D.C. Cir. 1987); <u>Hinton v. Dep't</u>
<u>of Justice</u>, 844 F.2d 126, 129 (3d Cir. 1988).

In support of this motion, ATF has provided a detailed
declaration and coded <u>Vaughn</u> index from Mr. Peter Chisholm,
Acting Chief, Disclosure Division of ATF who is responsible for
processing all of ATF's FOIA requests (Chisholm Declaration ¶ 1).
The declaration sets forth in detail the efforts that were
undertaken to search for responsive documents, the description of
responsive material, the application of exemption, and the
justification of withheld material (<u>Id</u>.).  In short, the

---

[2] "A Vaughn index must: (1) identify each document withheld;
(2) state the statutory exemption claimed; and (3) explain how
disclosure would damage the interests protected by the claimed
exemption." <u>Citizens Comm'n on Human Rights v. FDA</u>, 45 F.3d
1325, 1326 n.1 (9th Cir. 1995).  The explanations and
descriptions of withheld material "need not be so detailed as to
reveal that which the agency wishes to conceal, but they must be
sufficiently specific to permit a reasoned judgment as to whether
the material is actually exempt under FOIA." <u>Founding Church of</u>
<u>Scientology of Washington, D.C. v. Bell</u>, 603 F.2d 945, 949 (D.C.
Cir. 1979).

declaration and index provide the Court with a sufficient basis to permit "a reason judgment as to whether the material is actually exempt under FOIA." <u>Founding Church of Scientology of Washington, D.C.</u>, 603 F.2d at 949.

## II.  **ATF's Search Was Adequate**

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records.  <u>See Oglesby v. U.S. Dep't of Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990); <u>Judicial Watch, Inc. v. U.S. Dep't of Commerce</u>, 337 F. Supp. 2d 146, 158 (D.D.C. 2004); <u>Allen v. U.S. Secret Service</u>, 335 F. Supp. 2d 95, 97 (D.D.C. 2004); <u>Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health and Human Servs.</u>, 844 F. Supp. 770, 776 (D.D.C. 1993); <u>Weisberg v. U.S. Dep't of Justice</u>, 705 F.2d 1344, 1352 (D.C. Cir. 1983).  The reasonableness standard focuses on the method of the search, not its results.  Therefore, it follows that a search is not necessarily unreasonable because it fails to produce relevant material.  <u>Cleary</u>, 705 F.2d at 777 n.4.  An agency need not search every record system, but need only to search those systems in which it believes responsive records are likely to be located.  <u>Oglesby</u>, 920 F.2d at 68.

The search standards under FOIA do not place upon the agency a requirement that it prove that all responsive documents have been located.  <u>Nation Magazine, Washington Bureau v. U.S. Customs Serv.</u>, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  It has been held that "'the search need only be reasonable; it does not have to be

exhaustive.'" <u>Miller v. Dep't of State</u>, 779 F.2d 1378, 1383 (8th Cir. 1985) (citing <u>Nat'l Cable Television Ass'n v. FCC</u>, 479 F.2d 183, 186 (D.C. Cir. 1973)).  Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent.  <u>Nation Magazine</u>, 71 F.3d at 892 n.7. Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it. <u>Maynard v. CIA</u>, 986 F.2d 547, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." <u>Oglesby</u>, 920 F.2d at 68. "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith." <u>Miller v. U.S. Dep't of State</u>, 779 F.2d 1378, 1383 (8th Cir. 1985); <u>Goland v. CIA</u>, 607 F.2d 339, 352 (D.C. Cir. 1978), <u>cert</u>. <u>denied</u>, 445 U.S. 927 (1980).  Once the agency has proffered such evidence, the burden then shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency.  <u>Miller</u>, 779 F.2d at 1383.  A requester may not rebut agency affidavits with purely speculative allegations.  <u>See</u> <u>Carney v. U.S. Dep't of Justice</u>, 19 F.3d 807, 813 (2d Cir. 1994);

SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991); Maynard, 986 F.2d at 559-560.

The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate." Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994)(quoting Weisberg, 745 F.2d at 1485.

ATF has sustained its burden that the search for documents was reasonable, made in good faith and reasonably calculated to produce the information requested. Oglesby, 920 F. 2d at 68. The plaintiff may not rebut the declaration submitted by ATF with purely speculative allegations that the document produced was fraudulent. See Carney, 19 F.3d at 813.

**III. ATF Properly Invoked Exemption (b)(7)(C).**

Exemption 7 of the FOIA protects from disclosure "records or information compiled for law enforcement purposes" under certain circumstances. 5 U.S.C. § 552(b)(7). "[T]he term 'law enforcement purposes' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." Mittleman v. Office of Pers. Mgmt., 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123 (1997). When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." Keys, 830 F.2d at 340 (citing Pratt v. Webster, 673 F.2d 408, 418 (D.C. Cir. 1982)). A criminal law enforcement

agency must simply show that "the nexus between the agency's activity. . . and its law enforcement duties" is "based on information sufficient to support at least 'a colorable claim' of its rationality." Keys, 830 F.2d at 340 (quoting Pratt, 673 F.2d at 421). ATF is clearly a law enforcement agency (Chisholm Declaration ¶ 13).

The FOIA Exemption 7(C) applies to records or information compiled for law enforcement purposes to the extent release of the information could reasonably be expected to constitute an unwarranted invasion of privacy. 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)"). Exemption 7(C) protects the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations. See Reporters Comm. for Freedom of the Press v. U.S. Dep't of Justice, 816 F.2d 730, 740 (D.C. Cir. 1987), modified on other grounds, 831 F.2d 1124 (D.C. Cir. 1987), rev'd on other grounds, 489 U.S. 749 (1989); Computer Prof'ls for Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996); accord Nat'l Archives and Records Admin. v. Favish, 541 U.S. 157, 157-58 (2004). An agency in a FOIA case may categorically assert Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity. See Reporters Comm. for Freedom of the Press, 489 U.S. at 780; Nation Magazine, 71 F.3d at 893, 895-96 (D.C. Cir. 1995); SafeCard

<u>Servs.</u>, 926 F.2d at 1206.

The names of law enforcement officers who work on criminal investigations have also traditionally been protected against release by Exemption 7(C). <u>Davis v. U.S. Dep't of Justice</u>, 968 F.2d 1276, 1281 (D.C. Cir. 1992); <u>Lesar v. U.S. Dep't of Justice</u>, 636 F.2d at 487-88. Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity. <u>Computer Prof'ls for Social Responsibility</u>, 72 F.3d at 904; <u>Farese v. U.S. Dep't of Justice</u>, 683 F. Supp. 273, 275 (D.D.C. 1987). The fact that the requester might be able to ascertain the individuals' identities through other means, or that their identities have been disclosed elsewhere, does not diminish those individuals' privacy interests. <u>Fitzgibbon v. CIA</u>, 911 F.2d 755, 767-68 (D.C. Cir. 1990); <u>Weisberg</u>, 745 F.2d at 1491.

Once a privacy interest has been established, as here, it must be balanced against the public interest, if there is any, that would be served by the disclosure. <u>Albuquerque Publ'g Co.</u>, 726 F. Supp. at 855. The public interest in disclosure is limited to the FOIA's "'core purpose' of shed[ding] light on an agency's performance of its statutory duties." <u>Reporters Comm. for Freedom of the Press</u>, 489 U.S. at 773. This standard is not easily satisfied when law enforcement information pertaining to individuals is sought, for there "is no reasonably conceivable

11

way in which the release of one individual's name. . . would allow citizens to know 'what their government is up to.'" Fitzgibbon, 911 F.2d at 768.  See also Albuquerque Publ'g Co., 726 F. Supp. at 855-56 (no public interest in disclosure of sensitive information the DEA obtained about individuals and their activities, where such material would not shed light on the DEA's conduct with respect to the investigation).  In order to overcome legitimate privacy interests, the requester must demonstrate not only the existence of a public interest, but also that the public interest is both significant and compelling. Senate of Puerto Rico v. U.S. Dep't of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987); Stone v. FBI, 727 F. Supp. 662, 667-68 (D.D.C. 1990).

Here , the plaintiff's personnel interest in knowing who was involved in the report is not a significant or compelling public interest. Oguaju v. United States, 288 F.3d 448, 450 (D.C. Cir. 2002) (plaintiff's personal stake in using the requested information does not impact the calculation of public interest). Plaintiff's bald assertions of prosecutorial misconduct are insufficient to establish a public interest in disclosure. Id. at 288 F.3d 451.  ATF properly withheld the names and identifying information of Federal law enforcement personnel.

## IX.  Segregability Analysis

The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information

12

must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); <u>Mead Data Cent., Inc. v. U.S. Dept. of the Air Force</u>, 566 F.2d 242, 260 (D.C. Cir. 1977). The District of Columbia Circuit has held that a district court considering a FOIA action has "an affirmative duty to consider the segregability issue <u>sua</u> <u>sponte</u>." <u>Trans-Pacific Policing Agreement v. U.S. Customs Service</u>, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

Here, ATF staff reviewed the document page by page to ensure no additional information could be released. The <u>Vaughn</u> index describes all meaningful information. All releasable information was provided to plaintiff (Chisholm Declaration ¶ 24).

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment should be granted.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney


_____
R. CRAIG LAWRENCE, D.C. Bar #171538
Assistant United States Attorney


_____
DIANE M. SULLIVAN, D.C. Bar #12765
Assistant United States Attorney
555 4TH St., N.W.,
Civil Division
Washington, D.C.  20530
(202) 514-7205

14

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                              )
DONALD G. JACKMAN, JR.        )
                              )
              Plaintiff,      )
                              )
     v.                       )  Civil Action No. 05-1889(JR)
                              )
DEPARTMENT OF JUSTICE         )
BUREAU OF ALCOHOL, TOBACCO,   )
FIREARMS AND EXPLOSIVES       )
                              )
              Defendants.     )
                              )
_____)
```

## <u>STATEMENT OF FACTS AS TO WHICH THERE IS NO GENUINE ISSUE</u>

The defendants, in accordance with Local Rule 7.1(h), submit the following Statement of Facts as to which there is no genuine issue:

1.    On December 14, 2004, the Disclosure Division of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) received a letter dated December 6, 2004, containing Mr. Jackman's FOIA request for a legible document.[3]  He requested a duplicate of an allegedly illegible laboratory report it is believed he received through discovery during his criminal prosecution (Chisholm Declaration ¶ 3, Exhibit A, letter dated December 6, 2004). Mr. Jackman claimed that it was his fourth FOIA request for this particular document. <u>Id</u>.

---

[3] Upon searching its recording databases, the Disclosure Division confirmed that Mr. Jackman's December 6, 2004, FOIA request letter was the first correspondence it received from Mr. Jackman concerning this document (Chisholm Declaration, p. 2, ¶ 1).

2.   By letter dated December 20, 2004, ATF replied to Mr.
Jackman, requesting proof of identity or a reference number to
his previous FOIA requests.  Mr. Jackman could provide proof of
identity by notarized statement or self-certification to
authorize release of responsive records.  Alternatively, he could
supply a reference number to identify his alleged previous FOIA
requests (<u>Id</u>., Exhibit B, letter dated December 20, 2004).

3.   On January 5, 2005, the Disclosure Division received a
letter dated December 30, 2004, containing Mr. Jackman's reply.
Mr. Jackman included a notarized statement validating his
identity (<u>Id</u>., Exhibit C, letter dated December 30, 2004).

4.   By cover-letter dated January 28, 2005, ATF provided
Mr. Jackman with the requested document.  The Disclosure Division
withheld names and identifying information of third parties
pursuant to FOIA Exemption (b)(7)(C).  Mr. Jackman was provided
with information on how to take an administrative appeal (<u>Id</u>.,
Exhibit D, letter dated January 28, 2005).

5.   On February 16, 2005, the Disclosure Division received
a letter from Mr. Jackman, dated February 3, 2005, which was
believed to have been an attempt by him to verify that the proper
document was located.  He alleged that the document had been
falsified for use at his criminal trial, and requested a factual
document (<u>Id</u>., Exhibit E, letter dated February 3, 2005).

6.   By letter dated March 7, 2005, the Disclosure Division

2

responded to Mr. Jackman's February 3, 2005, letter and notified
him that all documents responsive to his FOIA request had been
released.  Upon receipt of Mr. Jackman's February 3, 2005,
correspondence, the Disclosure Division contacted ATF's
Pittsburgh Field Division[4] to verify that the document sent to
Mr. Jackman was complete and accurate.  A Special Agent familiar
with the criminal investigation into Mr. Jackman verified the
document contents and authenticity.  Furthermore, as Mr. Jackman
made reference in his February 3, 2005, letter to the
classification of an explosives device, the Disclosure Division
provided Mr. Jackman with information on how to contact the
Firearms Technology Branch directly if he has questions or
concerns regarding that matter.  Finally, Mr. Jackman was again
provided with information on how to effectuate an administrative
appeal (Chisholm Declaration, Exhibit F, letter dated March 7,
2005).

7.   On March 8, 2005, the Office of Information and Privacy
(OIP), DOJ, received an administrative appeal dated February 27,
2005, from Mr. Jackman, who continued his allegation that ATF
fabricated and withheld a document used to incarcerate him.  More
specifically, Mr. Jackman alleged that he had an original

---

[4] The Disclosure Division contacted the ATF Pittsburgh Field
Division because the latter Division was determined to maintain
file #766050-99-0029. See Paragraph 18 infra (Chisholm
Declaration, P. 3, ¶ 23).

3

laboratory report which supposedly conflicted with the alleged fabricated report sent to him.  His appeal letter also contained a request for documents beyond the scope of his December 6, 2004, FOIA request to ATF.  Mr. Jackman also requested that names and identifying information of third parties and law enforcement personnel remain visible on the documents (Id. ¶ 9, Exhibit G, letter dated February 27, 2005).

8.  By letter dated March 15, 2005, OIP informed Mr. Jackman that it had received his appeal, which would be reviewed in the order of its receipt, due to a substantial backlog (Id. ¶ 10, Exhibit H, letter dated March 15, 2005).

9.  By letter dated April 18, 2005, OIP informed Mr. Jackman that it affirmed the ATF action of March 7, 2005, regarding his FOIA request.  OIP directed its own search for any responsive documents, and confirmed ATF's decision (Id. ¶ 11, Exhibit I, letter dated April 18, 2005).

10.  ATF is a criminal and regulatory enforcement agency within the Department of Justice and is responsible for, among other things, enforcing Federal firearms laws including the Gun Control Act of 1968, 18 U.S.C. §§921-930, the Federal explosives laws, 18 U.S.C. Chapter 40, and the National Firearms Act, 26 U.S.C. Chapter 53. See 68 Fed. Reg. 4923 (2003).

11.  FOIA Exemption (b)(7)(C) protects records or information compiled for law enforcement purposes, production of

which could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. §552(b)(7)(C).

12. Pursuant to Exemption (b)(7)(C), ATF's Disclosure Division withheld the names of Federal law enforcement agents as well as information by which those individuals could be identified (Id. ¶ 15).

13. The individuals whose identities were protected are not the requester. Furthermore, Mr. Jackman presented no waivers that would permit release of any third party individual's information (Id. ¶ 16).

14. The individuals' names and identifying information referenced were compiled in connection with an investigation into violations of various crimes, including the possession of a firearm by a convicted felon (Id. ¶ 17)."

15. Revealing this information is unlikely to add to the public's understanding of how an agency works or how well it performs its duties (Id., ¶ 18). On balance, the Disclosure Division determined that the substantial privacy interest, which is protected by withholding this information, outweighs any minimal public interest that would be served by its release (Id. ¶ 18).

16. The Disclosure Division executed an independent and thorough search for all responsive material. The first step in conducting such a search was a query of the Treasury Enforcement

Communications System (TECS).[5]  TECS is a text-based database, owned and maintained by the Bureau of Customs and Border Protection, U.S. Department of Homeland Security, and contains information that may be of interest to law enforcement agencies. TECS is a computerized information system designed to identify individuals and businesses suspected of or involved in violation of Federal law.  TECS is also a communications system permitting message transmittal between Federal law enforcement offices and other international, state, and local law enforcement agencies. TECS provides access to the FBI's National Crime Information Center (NCIC) and the National Law Enforcement Telecommunication Systems (NLETS) with the capability of communicating directly with state and local enforcement agencies.  TECS is also a comprehensive ATF law enforcement database that contains ATF investigative records (Id., ¶ 22).

17.  ATF records located within TECS include: wanted persons and fugitives; known and suspected violators of laws falling within the jurisdiction of ATF; felons and dishonorably discharged veterans who have requested relief to own firearms and/or explosives under the Gun Control Act of 1968; violent felons; and gangs and terrorists.  The TECS system contains seven record subsections:  People, Businesses, Aircraft, Firearms,

_____

[5] TECS database is utilized by ATF to locate records within our Criminal Investigation Report System of Records. See 68 Fed. Reg. 3553 (Chisholm Declaration, p. 6, ¶ 3).

Vehicles, Vessels, and Things.  Bureauwide, ATF performs an average of 130,000 queries per month against records in the following subsections:  People, Business, Firearms, and Vehicles. These queries reveal ATF investigation numbers that correspond to a specific field division where any files would be located. Accordingly, because the TECS database contains the names of the individuals ATF has investigated, it was the place most likely to locate responsive records (Id., ¶ 22).

18.  In the instant case, the Disclosure Division made two separate queries of TECS to locate responsive information, on December 20, 2004, and October 17, 2005, using Mr. Jackman's first and last name, Social Security Number, date of birth, and address.  Both queries referred to the same file, #766050-99-0029.  Each investigation file number contains information which is coded to a specific ATF field division.  In this instance, ATF's Pittsburgh Field Division was determined to maintain file #766050-99-0029.  At the Disclosure Division's request, the Pittsburgh Field Division searched their records and located one responsive document, which was subsequently provided to the Disclosure Division, processed and released in part to Mr. Jackman.  No other documents responsive to Mr. Jackman's request were found.  ATF has conducted a search of all locations likely to contain responsive documents using methods reasonably expected to uncover all relevant documents.  Mr. Jackman received all ATF

materials responsive to his FOIA request (Id., ¶ 23).

19.  The Disclosure Division staff reviewed each page of the material identified as responsive to ensure that no additional information could be released.  The Vaughn index attached hereto describes in detail the document and all meaningful information contained therein.  All releasable information has been provided to Mr. Jackman (Id., ¶ 24).

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

_____
R. CRAIG LAWRENCE, D.C. Bar #171538
Assistant United States Attorney

_____
DIANE M. SULLIVAN, D.C. Bar #12765
Assistant United States Attorney
555 4TH St., N.W.,
Civil Division
Washington, D.C.  20530
(202) 514-7205

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this _____ day of November, 2005,

that a copy of the foregoing was served by First-Class mail;

postage prepaid to:

DONALD G. JACKMAN, JR.
#06804068
Federal Correction Institution,
McKean
P.O. Box 8000
Bradford, PA 165701

_____
DIANE M. SULLIVAN
Assistant United States Attorney
555 Fourth Street, N.W.
Civil Division
Washington, D.C.  20530